**After Recording Return To:**
RUTH RUHL, P.C.
Attn: Recording Department
12700 Park Central Drive, Suite 850
Dallas, Texas 75251

True and Certified Copy of the Original
sent for Recordation

[Space Above This Line For Recording Data]

Loan No.:
Investor Loan No.:

FHA Case No.:

# LOAN MODIFICATION AGREEMENT
### (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 4th day of April, 2022, between TABATHA CREAM, AN UNMARRIED WOMAN ("Borrower/Grantor") and Lakeview Loan Servicing, LLC by its attorney-in-fact M&T Bank, whose address is 4425 Ponce de Leon Blvd, 5th Floor, Coral Gables, Florida 33146 ("Lender/Grantee"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated April 8th, 2016, recorded April 27th, 2016, and recorded in Book/Liber OR13219, Page 5197, Instrument No. 5213442, of the Official Records of BURLINGTON County, New Jersey, and (2) the Note in the amount of U.S. $166,920.00, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property," located at 11 TINKER PLACE, WILLINGBORO, New Jersey 08046,

NEW JERSEY LOAN MODIFICATION AGREEMENT
(FNMA Modified Form 3179 1/01 (rev. 04/14))

Page 1 of 6

Loan No.:

the real property described being set forth as follows:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.
SEE EXHIBIT "B" ATTACHED HERETO AND MADE A PART HEREOF.

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.    As of May 1st, 2022, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $161,007.65, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2.    Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 3.875%, from April 1st, 2022. Borrower promises to make monthly payments of principal and interest of U.S. $757.12, beginning on the 1st day of May, 2022, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of 3.875% will remain in effect until principal and interest are paid in full. If on April 1st, 2052, (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3.    If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4.    Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the specified date in paragraph No. 1 above:

(a)    all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

(b)    all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

Loan No.:

5.    Borrower understands and agrees that:

(a)    All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b)    All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c)    Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d)    All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e)    Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(f)    Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

By checking this box, Borrower also consents to being contacted by text messaging⊙.

6.    If applicable, by this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligations to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items.

7.    Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been

Loan No:

waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund Borrower any Funds held by Lender.

Loan No.:

_20 April 22_                              _Tabatha Cream_                    (Seal)
Date                                        **TABATHA CREAM**              —Borrower

_____        _____        (Seal)
Date                                                                        —Borrower

_____        _____        (Seal)
Date                                                                        —Borrower

_____        _____        (Seal)
Date                                                                        —Borrower

## BORROWER ACKNOWLEDGMENT

State of _New Jersey_        §
                             § ss.
County of _Burlington_       §

I certify that on ___April   20___, _2022_ , TABATHA CREAM

personally came before me and stated to my satisfaction that this person (or if more than one, each person):

(a)    was the maker of the attached document; and
(b)    executed this document as his or her own act.

BARIS USLU
Notary Public · State of New Jersey
My Commission Expires Mar 29, 2026

_____
Notary Signature
_BARIS USLU_
Type or Print Name of Notary

_Notary Public_
Title
My Commission Expires: _03-29-2026_

Loan No.:

M&T Bank as attorney-in-fact for

Lakeview Loan Servicing, LLC        –Lender

4/25/22

-Date

By:

Printed Name:    Dominic Germano
              Assistant Vice President

Its:

## LENDER ACKNOWLEDGMENT

State of    New York      §

                          §

County of Erie            §

    I CERTIFY that on   April   25   2022        Dominic Germano
personally came before me and stated to my satisfaction that this person (or if more than one, each person):
(a) was the maker of the attached instrument
(b) was authorized to and did execute this instrument as        Assistant Vice President        , of
M&T Bank as attorney-in-fact for Lakeview Loan Servicing, LLC

the entity named in this instrument; and,
(c) executed this instrument as the act of the entity named in this instrument.

                                                          Notary Signature

        Larry B Hall
Notary Public State of New York
        Erie County
    LIC #01HA6421214
    COMM EXP. 08/30/2025

                                    Type or Print Name of Notary
                                    My Commission Expires:

ACKNOWLEDGMENT (NEW JERSEY)                                    Page 6 of 6

### EXHIBIT "A"

ALL THAT CERTAIN LOT, PARCEL OR TRACT OF LAND, SITUATE AND LYING IN THE TOWNSHIP OF WILLINGBORO, COUNTY OF BURLINGTON, STATE OF NEW JERSEY AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT IN THE EASTERLY LINE OF TINKER PLACE (50 FEET WIDE), DISTANT NORTHEASTERLY A TOTAL ARC AND TANGENT DISTANCE OF 180.00 FEET FROM THE INTERSECTION OF THE SAME WITH THE NORTHERLY LINE OF TULIP LANE (50 FEET WIDE), SAID POINT BEING IN THE DIVISION LINE OF LOTS 17 AND 18, BLOCK 1135, AS SHOWN ON THE OFFICIAL TAX MAP FOR WILLINGBORO TOWNSHIP; THENCE
1. NORTHERLY ALONG THE EASTERLY LINE OF TINKER PLACE, ON A CURVE TO THE LEFT HAVING A RADIUS OF 150.00 FEET, AN ARC DISTANCE OF 65.00 FEET; THENCE
2. ALONG THE DIVISION LINE OF LOTS 18 AND 19, NORTH 74 DEGREES 24 MINUTES 15 SECONDS EAST, A DISTANCE OF 139.58 FEET; THENCE
3. ALONG THE DIVISION LINE OF LOTS 18 AND 12 AND 13, SOUTH 07 DEGREES 39 MINUTES 05 SECONDS WEST, A DISTANCE OF 121.64 FEET; THENCE
4. ALONG THE DIVISION LINE OF LOTS 17 AND 18, NORTH 80 DEGREES 46 MINUTES 03 SECONDS WEST, A DISTANCE OF 116.17 FEET TO THE POINT OF BEGINNING.

APN: BLOCK 1135 LOT 18

EXHIBIT "A"

Loan No.:

## EXHIBIT "B"
## PRIOR LOAN MODIFICATION AGREEMENT

The Security Instrument was previously modified by a Loan Modification Agreement dated January 25th, 2018, recorded on February 13th, 2018, in Liber or Book OR13321, Page 9350, Instrument No. 5364087, of the Official Records of BURLINGTON County/Parish, New Jersey.

EXHIBIT "B"

**After Recording Return To:**
RUTH RUHL, P.C.
Attn: Recording Department
12700 Park Central Drive, Suite 850
Dallas, Texas 75251

Loan No.:

Investor Loan No.:

_____[Space Above This Line For Recording Data]_____

| FHA Case No.: |
|---|

# LOAN MODIFICATION AGREEMENT
### (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 4th day of April, 2022, between TABATHA CREAM, AN UNMARRIED WOMAN ("Borrower/Grantor") and Lakeview Loan Servicing, LLC by its attorney-in-fact M&T Bank, whose address is 4425 Ponce de Leon Blvd, 5th Floor, Coral Gables, Florida 33146 ("Lender/Grantee"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated April 8th, 2016, recorded April 27th, 2016, and recorded in Book/Liber OR13219, Page 5197, Instrument No. 5213442, of the Official Records of BURLINGTON County, New Jersey, and (2) the Note in the amount of U.S. $166,920.00, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property," located at 11 TINKER PLACE, WILLINGBORO, New Jersey 08046,

Loan No:

the real property described being set forth as follows:
SEE EXHIBIT "A"  ATTACHED HERETO AND MADE A PART HEREOF.
SEE EXHIBIT "B" ATTACHED HERETO AND MADE A PART HEREOF.

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.    As of  May 1st, 2022, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $161,007.65, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2.    Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 3.875%, from April 1st, 2022. Borrower promises to make monthly payments of principal and interest of U.S. $757.12, beginning on the 1st day of May, 2022, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of 3.875% will remain in effect until principal and interest are paid in full. If on April 1st, 2052, (the "Maturity Date"),  Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3.    If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4.    Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the specified date in paragraph No. 1 above:

(a)    all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

(b)    all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

Loan No.:

    5.      Borrower understands and agrees that:

    (a)     All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

    (b)     All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

    (c)     Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

    (d)     All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

    (e)     Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

    (f)     Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

    Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

    By checking this box, Borrower also consents to being contacted by text messaging☉.

    6.      If applicable, by this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligations to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items.

    7.      Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been

Loan No.:

waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such
time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for
all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant
and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a
waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan
Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any
such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in
accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in
such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the
Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the
maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of
current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with
applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or
entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan
Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender
shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying
the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make
such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds,
Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree
in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an
annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower
for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under
RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount
necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is
a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by
RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with
RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund Borrower
any Funds held by Lender.

Loan No:

20 APRIL 22
Date

_____ Tabatha Cream _____ (Seal)
                                    **TABATHA CREAM**              —Borrower

_____                   _____ (Seal)
Date                                                   —Borrower

_____                   _____ (Seal)
Date                                                   —Borrower

_____                   _____ (Seal)
Date                                                   —Borrower

### BORROWER ACKNOWLEDGMENT

State of New Jersey §
                          § ss.
County of Burlington §

I certify that on    April    20    , 2022    ,  TABATHA CREAM

personally came before me and stated to my satisfaction that this person (or if more than one, each person):

(a)    was the maker of the attached document; and
(b)    executed this document as his or her own act.

BARIS USLU
Notary Public - State of New Jersey
My Commission Expires Mar 29, 2026

_____
Notary Signature

BARIS USLU
Type or Print Name of Notary

_Notary Public_
Title
My Commission Expires: 03-29-2026

Loan No.:

__M&T Bank as attorney-in-fact for__
Lakeview Loan Servicing, LLC      –Lender

4/25/22

-Date

By:

Printed Name: ___Dominic Germano___
      Assistant Vice President
Its: _____

## LENDER ACKNOWLEDGMENT

State of    New York       §
                           §
County of Erie             §

CERTIFY that on Apcil   25 , 2022,      Dominic Germano
personally came before me and stated to my satisfaction that this person (or if more than one, each person):
(a) was the maker of the attached instrument
(b) was authorized to and did execute this instrument as ___Assistant Vice President___, of
M&T Bank as attorney-in-fact for Lakeview Loan Servicing, LLC

the entity named in this instrument; and,
(c) executed this instrument as the act of the entity named in this instrument.

Larry B Hall
Notary Public State of New York
Erie County
LIC #01HA6421214
COMM EXP. 08/30/2025

_____
Notary Signature

_____
Type or Print Name of Notary
My Commission Expires: _____

ACKNOWLEDGMENT (NEW JERSEY)                                    Page 6 of 6

## EXHIBIT "A"

ALL THAT CERTAIN LOT, PARCEL OR TRACT OF LAND, SITUATE AND LYING IN THE TOWNSHIP OF WILLINGBORO, COUNTY OF BURLINGTON, STATE OF NEW JERSEY AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT IN THE EASTERLY LINE OF TINKER PLACE (50 FEET WIDE), DISTANT NORTHEASTERLY A TOTAL ARC AND TANGENT DISTANCE OF 180.00 FEET FROM THE INTERSECTION OF THE SAME WITH THE NORTHERLY LINE OF TULIP LANE (50 FEET WIDE), SAID POINT BEING IN THE DIVISION LINE OF LOTS 17 AND 18, BLOCK 1135, AS SHOWN ON THE OFFICIAL TAX MAP FOR WILLINGBORO TOWNSHIP; THENCE
1. NORTHERLY ALONG THE EASTERLY LINE OF TINKER PLACE, ON A CURVE TO THE LEFT HAVING A RADIUS OF 150.00 FEET, AN ARC DISTANCE OF 65.00 FEET; THENCE
2. ALONG THE DIVISION LINE OF LOTS 18 AND 19, NORTH 74 DEGREES 24 MINUTES 15 SECONDS EAST, A DISTANCE OF 139.58 FEET; THENCE
3. ALONG THE DIVISION LINE OF LOTS 18 AND 12 AND 13, SOUTH 07 DEGREES 39 MINUTES 05 SECONDS WEST, A DISTANCE OF 121.64 FEET; THENCE
4. ALONG THE DIVISION LINE OF LOTS 17 AND 18, NORTH 80 DEGREES 46 MINUTES 03 SECONDS WEST, A DISTANCE OF 116.17 FEET TO THE POINT OF BEGINNING.

APN: BLOCK 1135 LOT 18

EXHIBIT "A"

Loan No.:

### EXHIBIT "B"
### PRIOR LOAN MODIFICATION AGREEMENT

The Security Instrument was previously modified by a Loan Modification Agreement dated January 25th, 2018, recorded on February 13th, 2018, in Liber or Book OR13321, Page 9350, Instrument No. 5364087, of the Official Records of BURLINGTON County/Parish, New Jersey.

EXHIBIT "B"

Loan No.:

# NOTICE OF NO ORAL AGREEMENTS

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

**Receipt of Notice:** The undersigned hereby represents and warrants that I/we have each received and read a copy of this Notice on or before the execution of the "Loan Agreement." "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods or any other thing of value or to otherwise extend credit or make a financial accommodation.

| | |
|---|---|
| 20 April 22 | TABATHA CREAM |
| Date | –Borrower |

| | |
|---|---|
| Date | –Borrower |

| | |
|---|---|
| Date | –Borrower |

| | |
|---|---|
| Date | – Borrower |

| | |
|---|---|
| Date | – Borrower |

| | |
|---|---|
| Date | – Borrower |

NOTICE OF NO ORAL AGREEMENTS (MULTISTATE)                                    Page 1 of 1

Loan No:

# CORRECTION AGREEMENT

**Borrower(s):** TABATHA CREAM

**Property:** 11 TINKER PLACE, WILLINGBORO, New Jersey 08046

Words used in this Agreement are defined below. Words in the singular mean and include the plural and vice versa.

**"Borrower"** is TABATHA CREAM.

**"Lender"** is Lakeview Loan Servicing, LLC by its attorney-in-fact M&T Bank
, and its successors or assigns.
**"Loan"** means the debt evidenced by the Note and all sums due under the Security Instrument.
**"Note"** means the promissory note(s) signed by Borrower in favor of Lender or any assignee of Lender.
**"Security Instrument"** means the Deed of Trust/Mortgage/Security Deed, signed by Borrower in favor of Lender, securing payment of the Note.

**AGREEMENT TO CORRECT OR PROVIDE ADDITIONAL DOCUMENTATION OR FEES:** In consideration of the Loan Modification Agreement offered by Lender in the amount of $161,007.65 , which modifies the Note and Security Instrument, and regardless of the reason for any loss, misplacement, omission, misstatement or inaccuracy in any Loan documentation, Borrower agrees as follows: If any document is lost, misplaced, omitted, misstated or inaccurately reflects the true and correct terms and conditions of the Loan, upon request of Lender (including any assignee of Lender), Borrower will comply with Lender's request to execute, acknowledge, initial and/or deliver to Lender any documentation Lender deems necessary to replace and/or correct the lost, misplaced, omitted, misstated or inaccurate document(s). All documents Lender requests of Borrower shall be referred to as "Requested Documents." Borrower agrees to deliver the Requested Documents within ten (10) days after receipt by Borrower of a written request for such replacement. Borrower does hereby agree to comply with Lender's request to assure that the Loan documentation executed this date will enable Lender to seek insurance or guaranty from the Department of Housing and Urban Development (HUD) or Department of Veteran's Affairs (VA), if applicable, or to conform with and be acceptable to the Federal National Mortgage Association (FNMA), Federal Home Loan Mortgage Corporation (FHLMC), Government National Mortgage Association (GNMA), or any other investor.

**REQUEST BY LENDER:** Any request under this Agreement may be made by the Lender (including assignees and persons acting on behalf of the Lender) and shall be *prima facie* evidence of the necessity for same. A written statement addressed to Borrower at the address indicated in the Loan documentation shall be considered conclusive evidence of the necessity for Requested Documents.

**BORROWER LIABILITY:** If Borrower fails or refuses to execute, acknowledge, initial or deliver the Requested Documents to Lender within ten (10) days after being requested to do so by Lender, Borrower understands that Lender is relying on the representations contained herein and agrees to be liable for any and all loss or damage which Lender reasonably sustains thereby including, but not limited to, all reasonable attorneys' fees and costs incurred by Lender.

This Agreement shall inure to the benefit of Lender's successors and assigns and be binding upon the heirs, devises, personal representatives, successors and assigns of Borrower.

### ACKNOWLEDGMENT OF RECEIPT

I hereby acknowledge receipt of this Correction Agreement and further acknowledge that I understand its provisions. Words used in this Correction Agreement mean and include the plural and vice versa.

30 April 22

Date

TABATHA CREAM                                    –Borrower

Date                                                             –Borrower

Date                                                             –Borrower

Date                                                           – Borrower

Date                                                           – Borrower

Date                                                           – Borrower

**CORRECTION AGREEMENT**                                    **Page 2 of 2**

Loan No.:

# ATTORNEY SELECTION NOTICE

By signing below, it is understood and agreed that you may hire a lawyer or attorney to advise you regarding this transaction and its consequences.

20. APRIL 22
_____    _____
Date                       **TABATHA CREAM**                    –Borrower

_____    _____
Date                                                           –Borrower

_____    _____
Date                                                           –Borrower

_____    _____
Date                                                           – Borrower

_____    _____
Date                                                           – Borrower

_____    _____
Date                                                           – Borrower

**ATTORNEY SELECTION NOTICE -MULTISTATE**                      **Page 1 of 1**

Loan No.:

# NOTICE OF NO ORAL AGREEMENTS

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

**Receipt of Notice:** The undersigned hereby represents and warrants that I/we have each received and read a copy of this Notice on or before the execution of the "Loan Agreement." "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods, or any other thing of value or to otherwise extend credit or make a financial accommodation.

| | |
|---|---|
| 20 April 22 | TABATHA CREAM                    –Borrower |
| Date | |
| | |
| Date | –Borrower |
| | |
| Date | –Borrower |
| | |
| Date | – Borrower |
| | |
| Date | – Borrower |
| | |
| Date | – Borrower |

NOTICE OF NO ORAL AGREEMENTS (MULTISTATE)                                   Page 1 of 1

Loan No.

# CORRECTION AGREEMENT

**Borrower(s):** TABATHA CREAM

**Property:** 11 TINKER PLACE, WILLINGBORO, New Jersey 08046

Words used in this Agreement are defined below. Words in the singular mean and include the plural and vice versa.

**"Borrower"** is TABATHA CREAM.

**"Lender"** is Lakeview Loan Servicing, LLC by its attorney-in-fact M&T Bank
, and its successors or assigns.
**"Loan"** means the debt evidenced by the Note and all sums due under the Security Instrument.
**"Note"** means the promissory note(s) signed by Borrower in favor of Lender or any assignee of Lender.
**"Security Instrument"** means the Deed of Trust/Mortgage/Security Deed, signed by Borrower in favor of Lender, securing payment of the Note.

AGREEMENT TO CORRECT OR PROVIDE ADDITIONAL DOCUMENTATION OR FEES: In consideration of the Loan Modification Agreement offered by Lender in the amount of $161,007.65 , which modifies the Note and Security Instrument, and regardless of the reason for any loss, misplacement, omission, misstatement or inaccuracy in any Loan documentation, Borrower agrees as follows: If any document is lost, misplaced, omitted, misstated or inaccurately reflects the true and correct terms and conditions of the Loan, upon request of Lender (including any assignee of Lender), Borrower will comply with Lender's request to execute, acknowledge, initial and/or deliver to Lender any documentation Lender deems necessary to replace and/or correct the lost, misplaced, omitted, misstated or inaccurate document(s). All documents Lender requests of Borrower shall be referred to as "Requested Documents." Borrower agrees to deliver the Requested Documents within ten (10) days after receipt by Borrower of a written request for such replacement. Borrower does hereby agree to comply with Lender's request to assure that the Loan documentation executed this date will enable Lender to seek insurance or guaranty from the Department of Housing and Urban Development (HUD) or Department of Veteran's Affairs (VA), if applicable, or to conform with and be acceptable to the Federal National Mortgage Association (FNMA), Federal Home Loan Mortgage Corporation (FHLMC), Government National Mortgage Association (GNMA), or any other investor.

**REQUEST BY LENDER:** Any request under this Agreement may be made by the Lender (including assignees and persons acting on behalf of the Lender) and shall be *prima facie* evidence of the necessity for same. A written statement addressed to Borrower at the address indicated in the Loan documentation shall be considered conclusive evidence of the necessity for Requested Documents.

**BORROWER LIABILITY:** If Borrower fails or refuses to execute, acknowledge, initial or deliver the Requested Documents to Lender within ten (10) days after being requested to do so by Lender, Borrower understands that Lender is relying on the representations contained herein and agrees to be liable for any and all loss or damage which Lender reasonably sustains thereby including, but not limited to, all reasonable attorneys' fees and costs incurred by Lender.

This Agreement shall inure to the benefit of Lender's successors and assigns and be binding upon the heirs, devises, personal representatives, successors and assigns of Borrower.

## ACKNOWLEDGMENT OF RECEIPT

I hereby acknowledge receipt of this Correction Agreement and further acknowledge that I understand its provisions. Words used in this Correction Agreement mean and include the plural and vice versa.

_____      _____
Date                                    TABATHA CREAM                    –Borrower

_____      _____
Date                                                                          –Borrower

_____      _____
Date                                                                          –Borrower

_____      _____
Date                                                                          – Borrower

_____      _____
Date                                                                          – Borrower

_____      _____
Date                                                                          – Borrower

Loan No.:

# ATTORNEY SELECTION NOTICE

By signing below, it is understood and agreed that you may hire a lawyer or attorney to advise you regarding this transaction and its consequences.

_____      _____
Date    *April 22*       TABATHA CREAM     –Borrower

_____      _____
Date                                      –Borrower

_____      _____
Date                                      –Borrower

_____      _____
Date                                      – Borrower

_____      _____
Date                                      – Borrower

_____      _____
Date                                      – Borrower

ATTORNEY SELECTION NOTICE -MULTISTATE                 Page 1 of 1

## TABATHA CREAM Loan Modification

*06/14/22 L mod Approved* (handwritten)

| | NOW | L. MOD 1 | (handwritten) |
|---|---|---|---|
| Unpaid Principal | $116K | $116K | 161K |
| Arrears | $47K | $47K | |
| Total Debt | $163K | $163K | 161K |
| | | | |
| Defer To Back of Loan | | ($47K) | |
| Forgive & Forget | | | |
| Interest Bearing | $163K | $116K | |
| Debt To Repay | $163K | $163K | 161K |
| | | | |
| Term To Maturity | 30/2048 | 40/2062 | 30/2052 |
| Interest Rate % | 4.13% | 4.13% | 3.875% |
| | | | |
| Monthly Payment | | | |
|     Principal | | $95 | |
|     Interest | | $400 | |
| | | | |
|     Sub Total | $760 | $495 | 757 |
| | | | |
|     RE Tax | $540 | $540 | |
|     HO Ins | $126 | $126 | |
|     P M I | $104 | | |
| | | | |
|     Sub Total | $770 | $666 | 763 |
| | | | |
| GRAND TOTAL | $1,530 | $1,161 | 1,520 |
| | | | |
| Trustee Payment | $429 | $285 | |
| | | | |
| ToTal Payment | $1,959 | $1,446 | |
|     Save Per Month | | $513 | |

 NoteS: Defer to Back of Loan with no payments on that portion until Sale, Transfer or Maturity.

 A Loan Modification will reduce the Trustee payment. Additionally the Mortgage Debt to Value of the home does not require PMI. The Debt is $163K and the Value is $270K;DTV 60%. PMI required when DTV is 80%.

John Prebich,Financial Analyst
Law Offices of Lee M. Perlman
1926 GreenTree Rd. Suite 100
Cherry Hill New Jersey, 08003

Phone: 856+751+4224
Fax: 856+751+4226
Email:jprebich@newjerseybankruptcy.com
web: www.newjerseybankruptcy.com



LCSS MIT CLOSING DEPT
8007241633
M&T BANK
475 CROSSPOINT PKWY.
GETZVILLE NY 14068

SHIP TO:
LEE MARTIN PERLMAN
SUITE 100
1926 GREENTREE RD
CHERRY HILL   NJ   08003

1 LBS     1 OF 1

NJ 081 9-03

UPS NEXT DAY AIR     1

TRACKING #: 1Z 889 2Y0 01 9996 6912

BILLING: P/P

Reference No.1  001-1356
Reference No.2  LM Doc Setup & Control